## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

STEVEN SANDERS and
ARLINE GREGOIRE,

   Plaintiffs,

  vs.           1:19-cv-00895-KWR-JHR

USAA CASUALTY INSURANCE COMPANY,

   Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

  **THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment, filed on August 26, 2021. **Doc. 67**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is **WELL-TAKEN** in part, and, therefore, is **GRANTED IN PART AND DENIED IN PART**. The Court grants summary judgment as to Counts II, III, IV, and V, but Count I remains.

## BACKGROUND

  This case is an insurance dispute arising out of a car accident. On April 16, 2014, Plaintiff Arline Gregoire's car collided with Plaintiff Steven Sanders' motorcycle. *See* **Doc. 1-1, Ex. A, ¶¶ 7–9**. Sanders attempted to settle his potential claim against Gregoire, but Gregoire's insurer, Defendant United States Automobile Association Casualty Insurance Co. ("USAA CIC"), allegedly thwarted these efforts when it declined to execute an affidavit that was a precondition to settlement. *Id.* **¶¶ 19–24**. Sanders then sued Gregoire in state court, but the parties later settled. *Id.* **¶¶ 25–26**. As part of the settlement agreement, Gregoire assigned to Sanders 50% of her rights to pursue extra-contractual claims against Defendant for its failure to execute the affidavit. *Id.* **¶**

**32**.  Thereafter, on August 19, 2019, Plaintiffs filed suit in the Second Judicial District Court, Bernalillo County, State of New Mexico alleging the following claims:

| | |
|---|---|
| Count I: | Insurance Bad Faith |
| Count II: | Breach of the Implied Covenant of Good Faith and Fair Dealing |
| Count III: | Breach of Contract |
| Count IV: | Violation of the New Mexico Trade Practices and Frauds Act and the Insurance Code |
| Count V: | Violation of the New Mexico Unfair Trade Practices Act |

Defendant timely removed this case to this Court (**Doc. 1**).

<b>FACTS</b>[1]

On April 15, 2014, USAA CIC issued a New Mexico Auto Policy ("the Policy") to Plaintiff Gregoire and her spouse.  The Policy was effective from April 16, 2014 to May 8, 2014 and provided bodily injury coverage of $100,000 to each person and $300,000 for each accident.  *See* **Undisputed Material Fact ("UMF") 1, Doc. 67, at 4**.

On April 16, 2014, Plaintiff Gregoire and Plaintiff Sanders were involved in a car accident. **UMF 3, Doc. 67, at 5**.  Two weeks later, on April 29, 2014, Counsel for Sanders, Mr. Romero, contacted USAA CIC to request that the company "obtain its insured's permission to disclose coverage and policy limits" and "provide certified copies of policies available to cover the loss." **UMF 4**.  USAA CIC acknowledged the letter from Mr. Romero the same day and requested that Mr. Romero provide additional information so that Defendant could evaluate the claim.  **UMF 5**.

The next day, a representative for USAA CIC, Ms. Kilpatrick, also acknowledged Mr. Romero's letter.  Ms. Kilpatrick advised Mr. Romero that she would request Gregoire's permission

---

[1] The Court has determined the relevant facts based on the parties' submissions, while omitting extraneous detail, party arguments, and facts not supported by the record.  Disputes concerning the facts are noted.

to disclose the limits of her USAA CIC policy, and requested that Mr. Romero contact her to schedule Sanders' accident statement and that Sanders return a completed authorization form. **UMF 6**. The same day, Ms. Kilpatrick also sent a letter to Gregoire and her spouse, informing them that USAA CIC was investigating the claim, requesting that they execute a form granting USAA CIC permission to disclose their policy limits to Sanders and Mr. Romero, and advising them of their right to hire a lawyer for any additional liability that may not be covered by the USAA CIC policy. **UMF 7, Doc. 67, at 6**.

On May 8, 2014, Ms. Kilpatrick submitted a form to USAA CIC titled "Request for Authority," identifying the Gregoire's auto policy limits and listing a "high" "value range" of $100,000. *See* **Doc. 67-6, Ex. F**. The following week, Ms. Kilpatrick sent a letter to Mr. Romero providing information about Gregoire's policy limits; attached to the letter was a copy of Gregoire's policy coverage, but she declined to provide a certified copy of the policy. *See* **UMF 9**; **Doc. 67-7, Ex. G, at 2**.

On May 20, 2014, Mr. Romero sent a reply to Ms. Kilpatrick noting that because she had "declined to provide…a certified copy of the policy," enclosed was a "verification of coverage" affidavit. Mr. Romero requested that Gregoire and USAA CIC each execute the affidavit so that Sanders could "confirm available coverages." Mr. Romero explained that if USAA CIC and Gregoire failed to "disclose available liability limits, in a form that [was] verified," Sanders would file a lawsuit against Gregoire. **UMF 10; Doc. 70, at 7**. In relevant part, the verification of coverage affidavit prepared by Mr. Romero for Ms. Kilpatrick stated:

> 7. USAA is unaware of any additional liability insurance policies through any other carrier which would provide Ms. Gregoire coverage for the accident of April 16, 2014.
>
> 8. There are no additional liability policies in effect with USAA or with any other carrier which would have provided coverage for the damages caused to

Steven Sanders in the automobile accident of April 16, 2014 of which I am aware and have failed to disclose.

*See* **Doc. 67-8, Ex. H, at 4–5**; **Doc. 70, at 7**.

Ms. Kilpatrick responded to Mr. Romero's reply the same day and explained USAA CIC had not denied the request to provide the policy limits, and that the information requested by Mr. Romero was attached to the letter. She attached a copy of Gregoire's declaration page showing liability coverage available at the time of the incident, and further explained that USAA CIC "declined to provide [Mr. Romero] with a certified copy of [Gregoire's] automobile policy [because] it does not show the limits available the day of this loss as [] requested." **UMF 11**; **Doc. 67-9, Ex. I**. USAA CIC then sent Gregoire a letter requesting that she execute the affidavit provided by Mr. Romero and consult her own lawyer if she wished. **UMF 12, Doc. 67, at 7**. On June 2, 2014, USAA CIC returned Gregoire's executed affidavit to Mr. Romero, but USAA CIC did not execute an affidavit. **UMF 13**; **Doc. 70, at 7**.

Two months later, on August 7, 2014, Mr. Romero sent a letter to Ms. Kilpatrick with Sanders' medical records and medical bills for injuries he sustained in the accident. Mr. Romero informed Ms. Kilpatrick that "prior to acceptance of any policy limits offer[,] [he would] require a certified copy of the policy as well as the truthful execution of affidavits by USAA and its insureds confirming all policies and total available liability limits." **UMF 14**, **Doc. 67-12, Ex. L**.

On August 12, 2014, Ms. Kilpatrick responded to Mr. Romero's letter by confirming USAA CIC's offer of its policy limit of $100,000 to settle Sanders' claim, enclosing a claim release, another copy of Gregoire's declaration page of her USAA CIC policy, and Gregoire's affidavit confirming that there were no existing "additional liability policies in effect which would have provided coverage for the damages." **UMF 15**.

4

On September 10, 2014, Ms. Kilpatrick sent another letter to Mr. Romero, informing him that USAA CIC had declined to execute the affidavit.  Ms. Kilpatrick explained that Gregoire had already provided him with an affidavit confirming that she did not carry any other liability insurance.  **UMF 16**.  The next day, Mr. Romero responded to Ms. Kilpatrick with a time-sensitive demand letter warning her that if the matter was not settled by September 19, 2014, Sanders would file suit against Gregoire.  Mr. Romero's letter stated that:

> The terms of settlement are that [1] USAA tender all available liability limits, and [2] that its insured execute an affidavit confirming there are no additional liability limits under any other liability policies, and [3] that USAA execute the affidavit previously provided by my office confirming that there are no other liability policies of which USAA is aware providing any additional coverage in this matter.

*See* **Doc. 67-15, Ex. O**.[2]

On September 15, 2014, Ms. Kilpatrick responded to the demand letter with an executed, modified affidavit.  Ms. Kilpatrick struck paragraphs 7 and 8 of the original affidavit, *see supra*, regarding USAA CIC's awareness of additional liability policies and explained that this was because the company had "no knowledge of items 7 and 8."  *See* **Doc. 67-16, Ex. P**.

Three months later, on December 8, 2014, Mr. Romero contacted Ms. Kilpatrick to request that USAA CIC confirm by December 12, 2014 that it was rejecting the settlement demands.  **UMF 19, Doc. 67, at 8**.  The letter stated that "by refusing to execute an unmodified affidavit provided, USAA refuses to confirm that there is no other liability coverage available to [Gregoire] of which USAA is aware but has failed to disclose."  *See* **Doc. 70, at 8**.  On December 10, 2014, Ms. Kilpatrick responded that USAA CIC did not reject the terms of the settlement, but instead, had

---

[2] The parties dispute the others interpretation of this letter and subsequent correspondence; however, the contents of these communications remain undisputed.  *Compare* **Doc. 67, at 8** (Defendant argues that the settlement "would require that USAA CIC execute the affidavit previously provided to it confirming there were no liability policies with carriers other than USAA available for the Accident") *with* **Doc. 70, at 4** (Plaintiffs assert that the settlement only required that USAA CIC confirm that "there are no other liability policies of which USAA is aware providing any additional coverage in this matter").

offered the limit of $100,000, provided the affidavit executed by Gregoire, and provided a modified affidavit signed by USAA CIC affirming that "USAA does not have any additional liability policies to cover this loss," but she advised that "USAA cannot respond on behalf of other carriers (if any)."  **UMF 20**.

Four months passed, and on April 7, 2015, Ms. Kilpatrick sent Mr. Romero an email with another modified affidavit.  This time, Ms. Kilpatrick only modified paragraph 8 of the verification of coverage affidavit, striking the words "or with any other carrier," and which now read:

> 8.    There are no additional liability policies in effect with USAA ~~or with any other carrier~~ which would have provided coverage for the damages caused to Steven Sanders in the automobile accident of April 16, 2014 of which I am aware and have failed to disclose.

**Doc. 67-19, Ex. S** (strikethrough in original).  Several hours later, Ms. Kilpatrick sent another email to Mr. Romero with another modified affidavit.  Ms. Kilpatrick had modified paragraph 8, again, to add the following:

> 8.    **My investigation as of April 7, 2015 reveals that** [t]here are no additional liability policies in effect with USAA or with any other carrier which would have provided coverage for the damages caused to Steven Sanders in the automobile accident of April 16, 2014 of which I am aware and have failed to disclose.

**Doc. 67-20, Ex. T** (emphasis added); **UMF 22, Doc. 67, at 9**.  Mr. Romero responded to Ms. Kilpatrick the same day and informed her that the settlement offer had expired and been withdrawn because "part of the contingency for settlement of this case is that USAA complete the affidavit submitted by [Mr. Romero's] office, verifying that there is not additional liability coverage available of which USAA is aware and has failed to disclose."  **UMF 23**; **Doc. 70, at 9**.

One week later, on April 14, 2015, Ms. Kilpatrick executed the original affidavit requested by Mr. Romero, without any modifications.  **UMF 24**.  The following day, Mr. Romero rejected Ms. Kilpatrick's affidavit and replied to explain that "USAA's repeated failure to execute the

Affidavit timely resulted in a withdrawal of [the] settlement offer." **UMF 26**;[3] **Doc. 70, at 9**.  On April 24, 2015, Ms. Kilpatrick sent a letter to Gregoire informing her that the parties failed to settle the claim and asking her to notify USAA CIC when she was served with a lawsuit.  **UMF 27**.  The letter did not discuss the USAA CIC affidavit.  One month later, Sanders filed a lawsuit against Gregoire.  **UMF 28**.

On June 11, 2015, USAA CIC advised Gregoire that the damages sought by Sanders may exceed her policy limits and that USAA CIC had hired an attorney to defend her.  The company informed Gregoire that USAA CIC had offered the policy limit of $100,000 to settle the claim and that Sanders now demanded $150,000 in the lawsuit.  **UMF 29, Doc. 67, at 10**.  USAA CIC did not mention the affidavit in this correspondence.  During settlement negotiations, Gregoire did not request that USAA CIC execute an affidavit on her behalf.  **UMF 34**.  Gregoire testified that she was more knowledgeable about the coverages she and her spouse purchased through USAA CIC and other insurers than USAA CIC.  **UMF 33**.

Gregoire was aware that Mr. Romero requested that USAA CIC execute an affidavit but was not aware that the company did not execute the original.  **Doc. 70, at 10**.  Gregoire was also unaware that USAA CIC executed multiple affidavits prior to the lawsuit.  **UMF 35**.

In 2018, Sanders and Gregoire agreed to settle the lawsuit for $140,000.  **UMF 30**.  USAA CIC paid the $100,000 policy limit to Sanders, and Gregoire paid an additional $40,000 to Sanders.  **UMF 31**, **36**; **Doc. 67-27, Ex. AA**.  Gregoire did not request for USAA CIC to pay the $40,000.  **UMF 37**.  As part of the settlement, Gregoire assigned to Sanders any claims Gregoire might have against USAA CIC.  **UMF 30**.  The instant lawsuit then followed.

---

[3] Plaintiffs accurately note that Defendant's Undisputed Material Facts do not include Fact No. 25.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit. *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its initial burden, the non-movant cannot "rest on the pleadings[,] but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim." *See Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and the moving party will be entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

On summary judgment, a court is to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A court cannot weigh the evidence and determine the truth of the matter, but instead, must determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## DISCUSSION

Plaintiffs argue that after the accident, USAA CIC refused, for nearly 11 months, to sign the requested affidavit. *See* **Doc. 70, at 1**. Plaintiffs assert that USAA CIC "falsely insist[ed]…that

the affidavit required USAA CIC to verify that no other policies existed," when in reality, "the affidavit only sought USAA CIC's verification that it was unaware of additional liability coverage and had not failed to disclose additional liability policies." *Id.*  Therefore, Plaintiffs argue that the Court should deny Defendant's motion for summary judgment because the parties dispute whether USAA CIC's actions were reasonable and because the evidence supports Plaintiffs' asserted claims.  *Id.* **at 2**.  Defendant seeks summary judgment on all claims.

At the outset, Defendant makes an evidentiary objection to a report provided by Plaintiffs' claims expert, Gary T. Fye.  *See* **Doc. 74, at 5–7**.  "At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial…Nonetheless, the content or substance of the evidence must be admissible."  *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (internal quotations and citations omitted).  In this case, Mr. Fye's report appears to consist of unsworn statements.  Such unsworn opinions by a party's proposed expert do not meet the requirements of Rule 56 of the Federal Rules of Civil Procedure and cannot be considered by a district court in ruling on a summary judgment motion.  *See David Otero v. Nat'l Distrib. Co.*, 627 F. Supp. 2d 1232, 1239 (D.N.M. 2009).

Additionally, an expert's opinion must be helpful to the trier of fact.  *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 647–48 (10th Cir. 1991).  Here, the highlighted portion of Mr. Fye's report consists of opinions and conclusions, some of which are unsupported by any facts in the record, that are unlikely to be helpful to or assist the trier of fact.  It is not the role of an expert witness to usurp the jury's task of evaluating the evidence.  *See, e.g.*, **Doc. 70-2, Ex. 2, at 8** ("The self-serving comments about not wishing to speak for other insurers did not come close to providing a reasonable basis to delay or withhold settlement of the claim.").  Therefore, the Court

did not consider the unsworn statements and opinions of Plaintiffs proffered expert in its determination of this motion.

### I.   The Bad Faith Claim (Count I).

Plaintiffs claim that Defendant acted in bad faith by failing "to timely investigate, evaluate, and pay Mr. Sander's claims."  *See* **Doc. 70, at 11–12**.  The parties agree that New Mexico law governs this Policy.  "Under New Mexico law, an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded." *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 18, 135 N.M. 106, 112, 85 P.3d 230, 236.  The terms "frivolous or unfounded" in this context do "not mean erroneous or incorrect," rather, it means "an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim." *See Sloan*, 85 P.3d at 237 (internal quotations omitted).  Therefore, an insurer may delay or deny coverage "without exposure to a claim of bad faith failure to pay as long as it has reasonable grounds for the denial." *See Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶ 19, 453 P.3d 1235, 1241.

Generally, reasonable grounds will follow from a "reasonable investigation," but where an insurer fails to make an "adequate investigation," it may be liable for a bad faith denial of a claim. *Id.* ("The investigation need not be perfect, but it must be 'reasonably appropriate under the circumstances.'").  In sum, to be liable for bad faith, "the insurer must lack a founded belief, and the founded belief is absent when the insurer fails to undertake an investigation adequate to determine whether its position is tenable." *See Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 13, 293 P.3d 954, 958.

"Whether an insurer delayed paying an insured's claim in bad faith is typically a question for the jury." *See Montoya v. Loya Ins. Co.*, No. CV 18-590 SCY/JFR, 2019 WL 5457081, at *9

(D.N.M. Oct. 24, 2019).  However, "[u]ntil the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed."  *See Yumukoglu v. Provident Life & Acc. Ins. Co.*, 131 F. Supp. 2d 1215, 1227 (D.N.M. 2001), *aff'd*, 36 F. App'x 378 (10th Cir. 2002) (quoting *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436–37 (10th Cir. 1993)).

Here, Plaintiffs argue that a jury could find that they have established a bad faith claim because the evidence shows that USAA CIC "utterly failed to exercise care for Mrs. Gregoire's interests when it delayed signing the affidavit without a reasonable basis for such refusal."  *See* **Doc. 70, at 13**.  Defendant asserts that "USAA CIC timely investigated and evaluated the liability claim by Sanders against Gregoire and promptly offered the policy limits," and that summary judgment is appropriate on Plaintiffs' bad faith claim because "there was a 'fairly debatable' issue of law regarding whether USAA CIC was required to sign the affidavit requested by Sanders and Mr. Romero."  *See* **Doc. 67, at 12–13**.

Notably, the record is devoid of any facts to support the allegation that Defendant did not adequately or timely investigate the claim.  USAA CIC swiftly and repeatedly offered to pay the $100,000 limit to settle the claim, and Plaintiffs do not argue otherwise. *See* **Doc. 70, at 13** (admitting that "USAA CIC agreed to tender Policy limits and did not contest liability or the claim's value").  Consequently, Plaintiffs' bad faith claim turns on whether Defendant's handling of the execution of the affidavit and the resulting delay in payment was in bad faith.[4]  Whether

---

[4] The standard for bad faith *delay* claims, as compared to bad faith *denial* claims, is not clear.  "A plaintiff must show that a denial of a claim is frivolous or unfounded, but in cases of delay rather than denial, it appears that a simple reasonableness standard applies."  *See Montoya*, 2019 WL 5457081, at *6 (noting that the relevant New Mexico pattern jury instructions use a reasonableness standard for claims regarding "unreasonable delay in investigation or payment").  The parties appear to argue under both standards. *E.g.*, **Doc. 67, at 16** ("USAA CIC's hesitation regarding signing an affidavit addressing coverage available to the Gregoires for the accident with other insurers was neither

Defendant's actions were reasonable or unfounded are central to this claim, and here, "the undisputed facts permit differing inferences as to the reasonableness…of the insurer's conduct." *See Yumukoglu*, 131 F. Supp. 2d at 1226 (quoting *Oulds*, 6 F.3d at 1436–37).   Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that the sum of the evidence, including the plain text of the affidavit, the correspondence from Mr. Romero, and Defendant's modification but eventual execution of the original affidavit, support Plaintiffs' assertion that they sought nothing more than for USAA CIC to "verify its knowledge about existing policies," and Defendant's failure to timely execute the original was arbitrary and lacked support based on the circumstances surrounding the claim. *See* **Doc. 70, at 15**.   Therefore, the Court declines to grant summary judgment on this claim.

## II.   Breach of Contract Claim (Count III).

Next, Plaintiffs assert that Defendant breached the insurance contract because it "failed to perform and obscured its obligations under the express and implied provisions" of the Policy.  *See* **Doc. 1, at ¶ 54**.  In New Mexico, insurance policies are treated "as an ordinary contract to be construed according to customary principles of contract interpretation."  *See Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013).  Generally, the elements of a breach of contract action include: (1) the existence of a contract, (2) the breach of the contract, (3) causation, and (4) damages.  *See, e.g.*, *McCasland v. Prather*, 1978-NMCA-098, ¶ 7, 92 N.M. 192, 194, 585 P.2d 336, 338.

An insurance policy "must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end."  *Safeco Ins. Co. of Am. v. McKenna*, 1977-

---

unreasonable, frivolous nor unfounded.") *and* **Doc. 70, at 16** ("In the present case, whether the decision to delay signing the affidavit was reasonable under the circumstances is best left to a jury.").

NMSC-053, ¶ 18, 90 N.M. 516, 520, 565 P.2d 1033, 1037.  Where policy terms "have a common and ordinary meaning, that meaning controls in determining the intent of the parties."  *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 10, 285 P.3d 644, 647 (quoting *Battishill v. Farmers All. Ins. Co.*, 2006-NMSC-004, ¶ 13, 139 N.M. 24, 27, 127 P.3d 1111, 1114).  If a provision appears "questionable or ambiguous," the Court must first look to "whether their meaning and intent is explained by other parts of the policy."  *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 20, 123 N.M. 752, 758, 945 P.2d 970, 976.  The "traditional rules of punctuation, syntax, and grammar may also help clarify a contractual ambiguity."  *Id.*

Whether contractual terms are ambiguous is a question of law.  *See ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 9, 299 P.3d 844, 849.  A provision or policy term is ambiguous only if it is "reasonably and fairly susceptible of different constructions."  *See Knowles v. United Servs. Auto. Ass'n*, 1992-NMSC-030, ¶ 9, 113 N.M. 703, 705, 832 P.2d 394, 396 (internal quotations omitted).  "The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear."  *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 114 N.M. 778, 781, 845 P.2d 1232, 1235.

Generally, "an insurance policy which may reasonably be construed in more than one way should be construed liberally in favor of the insured."  *Battishill*, 127 P.3d at 1115.  However, the Court will not "strain[] construction" of terms, and an "ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other."  *Id.* A court must grant summary judgment and "interpret the meaning as a matter of law when the evidence presented is so plain that it is only reasonably open to one interpretation."  *See ConocoPhillips*, 299 P.3d at 849 (internal quotations omitted) (quoting *Randles v. Hanson*, 2011-NMCA-059, ¶ 26, 150 N.M. 362, 258 P.3d 1154, 1162).

13

In relevant part, the Policy provides that: "In return for payment of the premium and subject to all the terms of this policy, [USAA CIC] will provide the coverages and limits of liability for which a premium is shown in the Declarations."  *See* **Doc. 67-1, Ex. A, at 3**.  The Policy also provides that USAA CIC "will pay compensatory damages for BI [bodily injury] or PD [property damage] for which any covered person becomes legally liable because of an auto accident. **We will settle or defend, as we consider appropriate, any claim or suit asking for these damages**."  *Id.* **at 4** (emphasis added).  Finally, the Policy states that USAA CIC's "duty to settle or defend ends when our limit of liability for these coverages **has been paid or tendered**."  *Id.* (emphasis added).

Here, Plaintiffs argue that the Policy's terms "are ambiguous, and a reasonable insured would expect an insurer to timely accept reasonable terms for a policy-limits settlement."  *See* **Doc. 70, at 19**.  Plaintiffs assert that the pertinent language of the Policy "could mean either (1) USAA CIC will only settle or defend if USAA CIC considers settlement or defense to be appropriate; or, (2) USAA CIC will settle or defend in a manner that USAA CIC considers to be appropriate."  *Id.*  According to Plaintiffs, because the Policy is ambiguous, the Court should use "extrinsic evidence" to resolve the ambiguity, and viewing the evidence, USAA CIC's actions "indicate the Policy required USAA CIC to settle claims in a manner it considered to be appropriate" and it did not "timely 'tender' policy limits."  *Id.* **at 20**.

The Court rejects Plaintiffs arguments.  The language of the Policy is not ambiguous.  The above language clearly indicates that the contractual duty of the insurer is to: (1) defend the insured **or** (2) settle the claims, as the insurer considers appropriate.  Further, the terms of the Policy clearly provide that the insurer may satisfy their "duty to settle or defend" by tendering or paying the policy limits.  These provisions are not reasonably and fairly susceptible of different constructions,

nor, as Plaintiffs assert, do these provisions conflict with one another.  Plaintiffs attempt to insert the word "manner" into the plain text of the Policy is not sufficient to create ambiguity where one does not exist, and that Defendant both tendered the policy limit and defended Plaintiff Gregoire does not render the language of the Policy ambiguous.

Plaintiffs also assert that an 11-month delay in the performance of Plaintiffs' settlement terms was an additional breach "contravening the insured's reasonable expectations that the Policy required the insurer to appropriately (timely) settle claims."  *See* **Doc. 70, at 20**.  Again, Plaintiffs' arguments must fail.  "[W]hen a court finds that a term in an insurance policy is ambiguous, the court's construction of the policy will be guided by the reasonable expectations of the insured." *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1130 (D.N.M. 2019) (internal quotations and alterations omitted) (quoting *Rummel*, 945 P.2d at 977); *see also Berlangieri v. Running Elk Corp.*, 2002-NMCA-046, ¶ 13, 132 N.M. 92, 95–96, 44 P.3d 538, 541–42 ("The doctrine of reasonable expectations is available where policy language is ambiguous…The doctrine is also available when the 'dynamics of the insurance transaction' make way for its application."). Plaintiffs have failed to show that there is any ambiguity in the Policy, thus, the Court declines to consider Plaintiffs' reasonable expectations regarding Defendant's right to settle claims.

Here, based on the unambiguous terms of the Policy, Plaintiffs have failed to show a genuine dispute of material fact on the element of breach.  The crux of Plaintiffs' argument is that Defendant did not "appropriately" settle or defend.  However, the undisputed evidence shows that the policy limit of $100,000 was in fact tendered during negotiations, and the Policy expressly provided that Defendant may satisfy its duty to settle by tendering the policy limit.  *See Tender*, Black's Law Dictionary (11th ed. 2019) (defining "tender" as "an unconditional offer of money or performance to satisfy a debt or obligation" or "[a]n obligor's demonstration of readiness,

15

willingness, and ability to perform the obligation").  The undisputed evidence also shows that Defendant exercised the option to defend Plaintiff Gregoire after the settlement negotiations failed, and in fact did so in the state court lawsuit.  In sum, in view of the options permitted under the terms of the Policy, *i.e.*, the discretion to either settle or defend, Plaintiffs have failed to show any facts supporting its breach of contract claim; and because Plaintiffs have failed to proffer evidence on an essential element of this claim, the Court finds it unnecessary to address damages.  Therefore, the Court grants summary judgment on this claim.

### III.   Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Count II).

Next, Plaintiffs allege that Defendant breached the implied covenant of good faith and fair dealing because USAA CIC "held its own interests as a priority over Mrs. Gregoire's interests by not timely investigating, evaluating, and paying Mr. Sanders' claims."  *See* **Doc. 1, ¶ 49**.

Insurance contracts, like all other contracts, incorporate "an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract."  *See Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005, ¶ 13, 145 N.M. 542, 546, 202 P.3d 801, 805 (quoting *Dairyland Ins. Co. v. Herman*, 1998-NMSC-005, ¶ 12, 124 N.M. 624, 628, 954 P.2d 56, 60).  "The implied covenant is aimed at making effective the agreement's promises."  *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 51, 133 N.M. 669, 685, 68 P.3d 909, 925.  This means that "an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration."  *See Dairyland*, 954 P.2d at 61 (quoting *Lujan v. Gonzales*, 1972-NMCA-098, ¶ 39, 84 N.M. 229, 236, 501 P.2d 673, 680).  Thus, a breach of this covenant "requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party."  *See Elliott Indus. Ltd.*

*P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1114 (10th Cir. 2005) (quoting *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 64, 115 N.M. 690, 706, 858 P.2d 66, 82).

Here, Plaintiffs assert that "[a] rational trier of fact could find USAA CIC's actions withheld the benefits of the Policy from Mrs. Gregoire [b]ecause USAA CIC refused to sign the affidavit." *See* **Doc. 70, at 17**. Plaintiffs argue that Defendant's delay and failure to act directly led to the settlement withdrawal, thus depriving Plaintiff Gregoire of the Policy's benefits. ***Id.* at 17–18**. While Defendant argues that "[b]y agreeing, almost immediately, to pay the Policy limits and providing Gregoire with a defense in the 2015 Lawsuit, no reasonable jury could conclude that USAA CIC impeded or injured Gregoire's right to receive the full benefits of the insurance contract." *See* **Doc. 67, at 18**. Defendant asserts that it "applied equal consideration to its own interests and that of Gregoire's, and although USAA CIC did not and does not agree that it was required to execute the affidavit, it, nevertheless, did so[,] placing Gregoire's interests over and beyond its own, [and] defended Gregoire and paid Sanders the Policy's limits." ***Id.***

Here, Plaintiffs' allegation of breach of the implied covenant of good faith and fair dealing rests on the same basis as its breach of contract claim. *See Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, ¶ 12, 111 N.M. 57, 60, 801 P.2d 639, 642 (noting that "[a]pplication of the covenant of good faith and fair dealing becomes difficult, however, under circumstances where, as here, it may be argued that from the covenant there is to be implied in fact a term or condition necessary to effect the purpose of a contract."). As stated above, the parties' contract is unambiguous, and Plaintiffs failed to provide evidence that Defendant did not comply with the provisions of the agreement nor that the parties intended or expected for Plaintiffs' interpretation of the terms to control. Here too, Plaintiffs have failed to point to any evidence that Defendant breached the implied covenant incorporated in the contract by seeking "to prevent the contract's

17

performance or to withhold its benefits" from Gregoire.  *See Azar*, 68 P.3d at 925.  Therefore, the Court grants summary judgment on this claim.

## IV.    <u>New Mexico Trade Practices and Frauds Act Claim (Count IV).</u>

Plaintiffs allege that Defendant's conduct violated the Unfair Insurance Practices Act ("UIPA"), N.M. Stat. Ann. § 59A-16-20, of the Trade Practices and Frauds Act of the Insurance Code, N.M. Stat. Ann. §§ 59A-16-1 to -30.  An insurer's duty is "founded upon basic principles of fairness," and the UIPA prohibits unfair or deceptive insurance acts.  *See Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 29, 135 N.M. 397, 406, 89 P.3d 69, 78.  The UIPA "requires proof that the claims-handling conduct complained of was knowingly committed or committed with such frequency that it constitutes a general business practice of the insurer."  *See Fava v. Liberty Mut. Ins. Corp.*, No. 17CV00456 WJ/LF, 2019 WL 133269, at *3 (D.N.M. Jan. 8, 2019).  The Act, however, "does not impose a duty to settle in all instances, nor does it require insurers to settle cases they reasonably believe to be without merit or overvalued."  *See Hovet*, 89 P.3d at 78.

Plaintiffs argue that Defendant violated the Act by (1) "failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies," N.M. Stat. Ann. § 59A-16-20(B); (2) "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies," *id.* § 59A-16-20(C); (3) "failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured," *id.* § 59A-16-20(D); (4) "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear," *id.* § 59A-16-20(E); and (5) "failing to promptly provide an insured a reasonable

explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement," *id.* § 59A-16-20(N).  *See* **Doc. 1, ¶ 60**.

Defendant alleges that Plaintiffs have failed to present any facts to show that any alleged violations of the UIPA were knowingly committed by USAA CIC or committed with frequency as to constitute its general business practice.  *See* **Doc. 67, at 22–23**.  Defendant also alleges that Plaintiffs have not presented evidence to support the substantive elements of their allegations. Defendant argues Plaintiffs claims based on good faith to effectuate prompt and equitable settlement must fail because Defendant "had reasonable concerns executing an affidavit prepared by Mr. Romero, did not believe Mr. Romero had a reason or legal basis to demand the affidavit from USAA CIC, and attempted to modify the affidavit to comply with Mr. Romero's stated basis for needing the affidavit."  *Id.* **at 23**.  Defendant also argues that Plaintiffs' allegations that Defendant failed to promptly act with respect to its claims must also fail because "the undisputed material facts show that USAA CIC promptly offered policy limits of $100,000 within days of Mr. Sanders' counsel providing documentation of his injuries."  *Id.* **at 24**.

The Court will address each allegation.  First, Plaintiffs cannot show that USAA CIC failed to acknowledge and act promptly regarding communications about the claim.  Plaintiffs argue that Defendant failed to sign the affidavit "between May 2014 and April 2015," *see* **Doc. 70, at 22**, however, the undisputed evidence shows that Defendant acknowledged all letters received and continued to communicate with Mr. Romero throughout this period in an attempt to modify the affidavit.  Additionally, Ms. Kilpatrick generally responded to Mr. Romero's correspondence within a week of receipt, and often did so within days.

Second, Plaintiffs present no facts regarding USAA CIC's investigations or claims processing standards.  It is not enough to assert, without any factual basis, that USAA CIC's

"parent company's historical practices…showed a lack of reasonable standards for prompt claims investigation and evaluation."  *See* **Doc. 70, at 22**; **Doc. 70-2, Ex. 2, at 8–9** (stating that USAA CIC's "claim handlers behavior conformed to the parent company's historical practices and protocols, which were derived from McKinsey & Company consulting advice").  "The mere expression of an opinion without factual support is insufficient to raise a triable issue of material fact."  *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1148 (D.N.M. 2010) (internal alterations omitted) (quoting 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure: Evidence* § 6293 (2010)).  Neither Plaintiffs nor Mr. Fye's opinions, conclusions, and arguments on this matter are sufficient to provide factual support to Plaintiffs' claims.  Third, there is no evidence that Defendant failed to affirm or deny coverage within a reasonable time nor that Defendant failed to provide a reasonable explanation of the claim or the offer.  It is undisputed that Defendant offered the policy limit within days of receiving evidence of Plaintiff Sanders' injuries.

Fourth, Plaintiffs have failed to point to any evidence to support their claim that Defendant failed to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of the claim. Plaintiffs assert that USAA CIC failed to attempt to settle by "knowingly failing to sign the affidavit [for months] and having information that refusing to sign would lead to litigation."  *See* **Doc. 70, at 22**.  However, the evidence shows that Defendant made an attempt, after Plaintiffs sent a time-sensitive demand and prior to the demand's expiration, to sign the affidavit; and Defendant made at least two more attempts to sign after the offer's expiration.  Additionally, Plaintiffs have not pointed to any facts to show that Defendant's offer to settle was not prompt, fair, or equitable. Separate from Plaintiffs common law allegation of bad faith delay of payment of the claim, here, Plaintiffs have not shown any evidence that Defendant did not attempt to effectuate a prompt, fair, and equitable settlement of the claim.  *See Hovet*, 89 P.3d at 78 ("Any insurer that objectively

exercises good faith and fairly attempts to settle its cases on a reasonable basis and in a timely manner need not fear liability."); *Dydek v. Dydek*, 2012-NMCA-088, ¶ 33, 288 P.3d 872, 879 (affirming a finding of statutory bad faith where the insurance company initially "made no attempt" to settle, "ignored" the plaintiff's offer for the full value of the policy, and took three months before proposing a settlement offer).

Moreover, the evidence does not establish that any alleged violation of the Act by Defendant was knowingly committed or committed with such frequency as to constitute a "general business practice." N.M. Stat. Ann. § 59A-16-20. Indeed, Plaintiffs have failed to identify any facts demonstrating that Defendant engaged in similar conduct on any other occasion.[5] Accordingly, because Plaintiffs have not established a genuine issue of material fact in support of their UIPA claims, summary judgment is warranted on Count IV.

## V.   New Mexico Unfair Trade Practices Act (Count V).

Finally, Plaintiffs allege that Defendant violated the New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. §§ 57-12-1 to -16. Under the UPA, "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." *See id.* § 57-12-3. Generally, the Act is designed to "provide a remedy against misleading identification and false or deceptive advertising." *See Bhasker*, 361 F. Supp. 3d at 1137 (quoting *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 22, 142 N.M. 437, 166 P.3d 1091, 1096).

To state a claim, a plaintiff must allege that "(1) [the] defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of

---

[5] Plaintiffs also allege that Defendant violated § 59A-5-26(C)(2)(a) and (b) because USAA CIC "knowingly and willfully, or with such frequency as to indicate its general business practice" engaged in unfair insurance claims practices and (1) failed to pay or delayed payment of claims, or (2) compelled Plaintiffs to accept less than the amount due them or to hire an attorney to sue. *See* **Doc. 1, ¶ 62**. These claims fail for the same reason.

occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007); *Lohman*, 166 P.3d at 1093. "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *See Bhasker*, 361 F. Supp. 3d at 1137 (quoting *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17, 112 N.M. 97, 811 P.2d at 1311–12).

Here, Plaintiffs allege that by "failing to timely afford insurance benefits," USAA CIC (1) "misrepresented and failed to deliver the quality or quantity of services contracted for," (2) "misrepresented the characteristics of the coverage and services available," and (3) "used ambiguity, exaggeration or innuendo as to material facts in the sale of coverage." *See* **Doc. 1, ¶¶ 75–77**. In response, Defendant argues that Plaintiffs have failed to identify any oral or written statements made by USAA CIC in connection with the sale of the Policy. *See* **Doc. 67, at 25**; **Doc. 74, at 23**. Defendant asserts that Plaintiffs' allegations are based on "USAA's handling of and settlement of Mr. Sanders claim," and thus, any conduct during this period cannot form the basis of a UPA claim. *See* **Doc. 67, at 25**.

The Court finds that Plaintiffs have failed to identify any disputes of material facts on this claim. As Defendant correctly notes, Plaintiffs have failed to identify with specificity any evidence of oral or written statements made in connection with the sale of this Policy. Plaintiffs generally assert that USAA CIC made "statements that benefits for covered claims would be paid," **Doc. 70, at 24**, but provide no evidence of the substance of those statements, when they were made during the course of the sale, or by whom they were made. Additionally, Plaintiffs have failed to identify any evidence to show that any of USAA CIC's statements were knowingly made. *See Hauff*, 755

F. Supp. 2d at 1150 (granting summary judgment where the plaintiff "cite[d] no significantly probative summary-judgment evidence demonstrating that [defendant] Safeco's offer to pay after-tax wages was a false, misleading, or deceptive representation 'knowingly made' 'in connection with' the sale of services").

Plaintiffs cite *Ashlock v. Sunwest Bank of Roswell, N.A.*, 1988-NMSC-026, 107 N.M. 100, 753 P.2d 346 to support its position that although USAA CIC's "statements that benefits for covered claims would be paid may not have been intentionally misleading at the time of sale, USAA CIC's representations became false and misleading during the course of the transaction." *See* **Doc. 70, at 24**.  However, a misrepresentation under the UPA must still be knowingly made at the time of the sale.  *See Stevenson*, 811 P.2d at 1311–12 ("[F]or example, in a bait-and-switch, although the party may advertise an item at a special price, and he only has a very limited amount of that particular item, he should be aware that his advertising is misleading.").  Here, Plaintiffs have not pointed to any evidence to show that USAA CIC knowingly made any false or misleading statement in connection with the sale or the negotiation of the Policy.  Thus, the Court grants summary judgment on this claim.

## CONCLUSION

For the reasons stated above, the Court grants summary judgment on Plaintiffs' breach of the implied covenant of good faith and fair dealing claim (Count II), breach of contract claim (Count III), Unfair Insurance Practices Act claim (Count IV), and Unfair Practices Act claim (Count V).  However, Plaintiffs' bad faith claim (Count I) survives.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 67**) is **DENIED IN PART** and **GRANTED IN PART** as described above.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**